**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

SOPHIE H.,

                                    Plaintiff,                          No. 5:18-CV-375
                                                                              (CFH)
                v.

ANDREW SAUL,[1]

                                    Defendant.

_____

**APPEARANCES:**                                      **OF COUNSEL:**

Olinsky Law Group                                     HOWARD D. OLINKSY, ESQ.
300 S. State Street
Suite 420
Syracuse, New York 13202
Attorney for Plaintiff

Social Security Administration                        ELIZABETH D. ROTHSTEIN, ESQ.
Office of Regional General Counsel                    Special Assistant U.S. Attorney
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**

        Plaintiff Sophie H. brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her applications for disability insurance benefits and supplemental security

_____

        [1] Andrew Saul was appointed Commissioner of Social Security, and has been substituted as the
defendant in this action.

income ("SSI") benefits.  Dkt. No. 1 ("Comp.").[2]  Plaintiff moves for a finding of disability or a remand for a further hearing, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 9, 12.  For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

Plaintiff was born in 1966, and obtained her Associate's Degree.  T. 20, 57.[3]  She lives by herself in an apartment.  Id. at 60.  Plaintiff previously worked as a data entry clerk and a cashier at Wegmans.  Id. at 58.

On November 4, 2014, plaintiff protectively filed a Title XVI application for SSI benefits.  T. 193.  Plaintiff also protectively filed a Title II application for disability benefits.  Id. at 199.  Both applications alleged an onset date of March 1, 2014, but plaintiff later amended that date to May 24, 2014.  Id. at 52-53.  The applications were initially denied on February 12, 2015.  Id. at 108.  Plaintiff requested a hearing, and a hearing was held on February 8, 2017 before Administrative Law Judge ("ALJ") Kenneth Theurer.  Id. at 48-81, 117-18.  On March 29, 2017, ALJ Theurer issued an unfavorable decision.  Id. at 10-22.  On January 25, 2018, the Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the

---

[2] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 5.

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 8.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

Commissioner.  Id. at 1-3.  Plaintiff commenced this action on March 27, 2018.  See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing

3

Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience.  Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

4

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

5

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since May 24, 2014, the amended alleged onset date.  T. 12.  The ALJ found at step two that plaintiff had the severe impairments of obesity, anxiety disorder, obsessive-compulsive disorder, and depression.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 14.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to:

> [o]ccasionally lift twenty pounds, frequently lift ten pounds, sit for up to six hours, stand or walk for approximately six hours in an eight hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; can perform occasional balancing, stooping, kneeling, crouching, and crawling. She can understand and follow simple instructions and directions; perform simple tasks with or without supervision; can maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; can relate to and interact appropriately with others (coworkers, supervisors) to the extent necessary to carry out simple tasks. She can have no more than incidental contact with the public. The work would need to be limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes.

T. 14-15.  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  Id. at 20.  At step five, the ALJ determined that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant

numbers in the national economy that she could perform.  Id.  Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from May 24, 2014, through the date of this decision."  Id. at

## D. Arguments

Plaintiff first argues that the RFC is not supported by substantial evidence because the ALJ "failed to reconcile the opinion testimony of the consultative examiner fully."  Dkt. No. 9 at 15.  Relatedly, plaintiff also argues that the ALJ failed to properly weigh the opinion evidence by granting greater weight to the consultative examiner's opinion than the treating psychiatric opinions.  Id. at 19.  Conversely, the Commissioner argues that the ALJ's RFC determination is supported by substantial evidence.  See Dkt. No. 12 at 7.  Specifically, the Commissioner contends that the ALJ properly considered the limitations set forth in the consultative examiner's opinion, and that he properly evaluated the opinions of the treating providers.  Id. at 7, 10.

## E. Relevant Medical Evidence

### 1. Christina Caldwell, Psy.D

Plaintiff met with Dr. Caldwell on January 15, 2015 for a consultative psychiatric evaluation.  Plaintiff reported "frequent waking and a normal appetite."  T. 552.  She stated that she had some emotional problems as a child, and that she had been depressed since high school.  Id.  She reported dysphoric moods, psychomotor retardation, crying spells, loss of usual interests, diminished self esteem, diminished

sense of pleasure, and social withdrawal.  Id. at 552-53.  Plaintiff denied suicidal or

homicidal ideation, plan, intent, delusions, hallucinations, or paranoia.  Id. at 553.  She

reported excessive apprehension, worry, restlessness, and muscle tension, as well as

occasional nightmares and flashbacks to previous jobs and being kicked out of school in

the third grade.  Id.  Plaintiff indicated that she suffered from panic attacks about four

times a month, which included palpitations, sweating, breathing difficulties, and

trembling.  Id.  She reported obsessive-compulsive symptoms that included obsessive

thoughts, obsessive fears, ruminating, hoarding things, and checking the door

repeatedly.  Id.  She was very anxious about blood.  Id.  Plaintiff further reported

concentration difficulties, short-term memory deficits, difficulty learning new material, and

losing her train of thought.  Id.

On examination, Dr. Caldwell indicated that plaintiff's demeanor and

responsiveness to questions was cooperative.  T. 553.  Her manner of relating, social

skills, and overall presentation was adequate.  Id.  Plaintiff was dressed appropriately,

and was well groomed.  Id.  Her motor behavior was normal, but Dr. Caldwell observed

her "wringing her hands a lot."  Id. at 554.   Plaintiff's speech intelligibility was fluent, and

her quality of voice was clear.  Id.  Her expressive and receptive language was

adequate.  Id.  Plaintiff's affect was anxious and tense.  Id.  Her mood was neutral, and

her sensorium clear.  Id.  Her attention and concentration was mildly impaired, and she

was unable to complete serial 3s, but completed simple calculations.  Id.  Plaintiff's

recent and remote memory skills were mildly impaired.  Id.  She completed three out of

three objects immediately, and two out of three objects after five minutes.  Id.  She also

completed four digits forward and three digits backward.  Id.  Plaintiff's intellectual functioning was average to below average, and her general fund of information was appropriate to experience.  Id.  Plaintiff's insight was fair, and her judgment was fair to poor.  Id.

Plaintiff indicated that she needed help managing her finances.  T. 554.  She reported that she did not dress, bathe, or groom herself if she was not feeling well.  Id.  Plaintiff stated that she could cook, and her sister helps her with cleaning and laundry.  Id.  Plaintiff's hobbies included "the PROS program, reading, TV, music, and going to church."  Id. at 555.

Dr. Caldwell opined that plaintiff did not have limitations in her ability to follow and understand simple directions and instructions.  T. 555.  Dr. Caldwell further opined that plaintiff had moderate limitations in her ability to perform tasks independently, and mild limitations in her ability to maintain attention and concentration and learn new tasks.  Id.  Plaintiff had no limitations in her ability to maintain a regular schedule, but moderate to marked limitations in her ability to make appropriate decisions and appropriately deal with stress.  Id.  Plaintiff had moderate limitations in her ability to relate adequately with others.  Id.  Dr. Caldwell indicated that plaintiff's evaluation appeared "to be consistent with psychiatric problems that may significantly interfere with her ability to function on a daily basis."  Id.  Dr. Caldwell recommended that plaintiff continue her psychological and psychiatric treatment, and to consider intelligence testing.  Id.  She stated that plaintiff's prognosis was guarded.  Id.

**2. S. Juriga Ph.D.**

On January 22, 2015, Dr. S. Juriga reviewed plaintiff's medical record. He found that plaintiff had moderate limitations in activities of daily living; moderate limitations in maintaining concentration, persistence, and pace; and moderate limitations maintaining social functioning. T. 86. He indicated that plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. Id. at 88. Plaintiff could stand/walk or sit for a total of six hours in an eight-hour day. Id. She had no limitations pushing or pulling. Id. Dr. Juriga opinion that plaintiff had no limitations in her ability to remember locations and work-like procedures; understand and remember very short and simple instructions; understand and remember detailed instructions; and carry out very short and simple instructions. Id. at 89. Dr. Juriga indicated that plaintiff had sustained concentration and persistence limitations. Id. Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods. Id. at 90. Plaintiff was also moderately limited in her ability to work in coordination with or in proximity to others without being distracted by them. Id. Plaintiff had no limitations in her ability to perform activities within a schedule, maintain regular attendance, and with punctuality. Id. She had no limitations sustaining an ordinary routine without special supervision, or in her ability to make simple work-related decisions. Id.

Dr. Juriga opined that plaintiff had moderate limitations interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintaining socially appropriate behavior

and adhering to basic standards of neatness and cleanliness.  T. 90.  Plaintiff had no limitations in her ability to ask simple questions or request assistance.  Dr. Juriga further opined that plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting and traveling in unfamiliar places or using public transportation.  Id. at 90-91.  Plaintiff had no limitations setting realistic goals or making plans independently of others.  Id. at 91.  Dr. Juriga determined that plaintiff retained the ability to perform semi-skilled work.  Id.

### 3. Heather Henderson, PMHNP

On April 1, 2014, Psychiatric Nurse Practitioner Heather Henderson completed a Mental Residual Functional Capacity Questionnaire.  She indicated that plaintiff suffered from major depressive disorder, problems with social environment, and anxiety.  T. 1015.  NP Henderson indicated that plaintiff had been attending psychotherapy and taking her medications as prescribed, and reported benefit to her mood and anxiety.  Id.  Still, plaintiff continued to experience depression and anxiety symptoms.  Id.  She indicated that plaintiff was generally alert and oriented at appointments, and her speech was typically fluent.  Id.  Her mood was often marked as depressed.  Id.  NP Henderson indicated that she was unable to comment on how plaintiff's mental or emotional capabilities were affected by her impairments in at least eight limitation areas on the check-box form.  Id. at 1017.  NP Henderson opined that plaintiff was seriously limited in her ability to understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; and deal with

stress of semi skilled and skilled work.  Id. at 1018.  NP Henderson indicated that plaintiff would be absent from work for more than four days per month.  Id. at 1019.

On February 7, 2017, NP Henderson completed a medical source statement co-signed by Dr. David Kang.  NP Henderson indicated that plaintiff's prognosis was guarded.  T. 1103.  NP Henderson opined that plaintiff was unable to meet competitive standards in her ability to work in coordination with or proximity to others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and respond appropriately to changes in a routine work setting.  Id. at 1104.  She further opined that plaintiff was seriously limited but not precluded from remembering work-like procedures, making simple work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, dealing with normal work stress, being aware of normal hazards and taking appropriate precautions, interacting appropriately with the general public, maintaining socially appropriate behavior, and traveling in an unfamiliar place.  Id.  NP Henderson indicated that plaintiff would likely be off task more than 20 percent of the day.  Id. at 1105.


### 4. A. Hope Williams

A. Hope Williams, plaintiff's treating therapist, completed a series of employability assessment examinations beginning in October 2014 for the Onondaga County Department of Social Services.  In the October 27, 2014 assessment, Ms. Williams

noted that plaintiff had been diagnosed with major depressive disorder, obsessive compulsive disorder, and "R/O panic disorder." T. 1173. She indicated that plaintiff was very limited in her ability to understand and remember instructions and in her ability to function in a work setting. Id. at 1174. Plaintiff was moderately limited in her ability to carry out instructions, maintain attention and concentration, make simple decisions, interact appropriately with others, maintain socially appropriate behavior without exhibiting behavior extremes, and maintain basic standards of personal hygiene or grooming. Id. Ms. Williams noted that plaintiff "tend[ed] to miss work and call[ed] in often" and that she "ha[d] a hard time managing emotions while at work." Id.

In the February 5, 2015 assessment, Ms. Williams indicated that plaintiff no longer appeared limited in her ability to understand and remember instructions, but was very limited in her ability to make simple decisions and in her ability to function in a work setting. T. 1180. Plaintiff was moderately limited in her ability to carry out instructions, maintain attentions and concentration, interact appropriately with others, maintain socially appropriate behavior without exhibiting behavioral extremes, and maintain basic standards of personal hygiene or grooming. Id.

In the February 22, 2016 assessment, Ms. Williams indicated that plaintiff was moderately limited in her ability to follow, understand, and remember simple instructions and directions; perform low stress, simple, and complex tasks independently; maintain a schedule and attend to a daily routine; maintain concentration for rote tasks; and function in a work setting. T. 1184. Plaintiff had no limitations interacting with others and maintaining socially appropriate behavior without exhibiting behavior extremes and

maintaining basic standards of personal hygiene and grooming.  Id.  Ms. Williams noted

that plaintiff would be unable to participate in any activities except treatment or

rehabilitations for the next six to eleven months.  Id. at 1185

In a document entitled Confidential Medical Report Psychiatric Disability, dated

August 16, 2016, Ms. Williams indicated that plaintiff's grooming and hygiene were good.

T. 594.  Her eye contact was appropriate, and her speech was fluent with logical

thoughts.  Id.  Plaintiff had no evidence of psychosis, and she described her mood as

"good."  Id.  Ms. Williams noted that plaintiff experienced high anxiety when interacting

with large groups of people, and benefitted from increased support and direction.  Id. at

595.  She indicated that when plaintiff felt "overwhelmed and stressed out" it could result

in her making "impulsive decisions."  Id.  Ms. Williams further indicated that plaintiff had

"good personal awareness" and "good understanding of [her] abilities and limitations."

Id.  Plaintiff had "good engagement and willingness to participate in things."  Id.  Ms.

Williams further indicated that plaintiff could "become easily overwhelmed or frustrated,"

but "has learned to ask for help and voice her concerns better."  Id.

In the October 10, 2016 assessment, Ms. Williams indicated that plaintiff was

severely limited in her ability to perform low stress, simple, and complex tasks

independently; and maintain socially appropriate behavior without exhibiting behavior

extremes.  T. 1186.  Plaintiff was moderately limited in her ability to follow, understand,

and remember simple instructions and directions; maintain a schedule and attend to a

daily routine; and maintain attention and concentrations for rote tasks.  Id.  Plaintiff had

no limitations maintaining basic standards of personal hygiene and grooming.  Id.  Ms.

Williams noted that plaintiff would be unable to participate in any activities except treatment or rehabilitations for the next six to eleven months.  Id. at 1187.

### F. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will

15

not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency

16

physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

### 1. Dr. Caldwell's Opinion and Associated Stress Limitations

The ALJ afforded "great weight" to Dr. Caldwell's opinion due to "her programmatic expertise," and because "her opinion [was] supported by her examination." T. 16. The ALJ noted that,

> [s]pecifically, when evaluated, Dr. Caldwell noted that [plaintiff] was cooperative with adequate social skills, motor behavior was normal, eye contact was appropriate, speech intelligibility was fluent, thought processes was coherent and goal directed, affect was anxious and tense, mood was neutral, sensorium was clear, orientation was intact, attention and concentration was mildly impaired, recent and remote memory skills were mildly impaired, insight was fair, and judgment was fair to poor.

Id. The ALJ further noted that he "accounted for the limitations identified by Dr. Caldwell

in limiting [plaintiff] to simple work activity in a work environment free of fast-paced production requirements and no more than incidental contact with the public." Id. Plaintiff argues that, contrary to his statement that he incorporated all of Dr. Caldwell's limitations, "the ALJ did not adequately consider [p]laintiff's inability to tolerate stress, and he did not adequately incorporate limitations in the RFC to account for the moderate to marked limitation as opined by Dr. Caldwell." Dkt. No. 9 at 15. The Court disagrees.

As an initial matter, the Court notes that Dr. Caldwell's assessment that plaintiff retained a marked limitation in her ability to deal with stress does not automatically mandate a finding of disability. See Miller v. Berryhill, No. 6:16-CV-06467(MAT), 2017 WL 4173357, at *4 (W.D.N.Y. Sept. 20, 2017) ("[T]he Court notes that Dr. Ransom's opinion does not necessarily mandate a conclusion of disability due to the complete inability to deal with stress. Other courts in this Circuit have affirmed decisions denying benefits in cases where the record contains an opinion that the claimant has a "marked" limitation in performing a work-related function, such as found by Dr. Ransom.") (citing inter alia Fiducia v. Comm'r of Soc. Sec., No. 1:13-CV-285, 2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) ("The fact that [claimant] was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, particularly given the fact that the ALJ limited [her] to work that does not require more than occasional interaction with the public and co-workers."); see Davis v. Comm'r of Soc. Sec., No. 17-CV-6804P, 2019 WL 1870814, at *3 (W.D.N.Y. Apr. 26, 2019) ("Contrary to Davis's contention, 'marked' limitations do not necessarily constitute an inability to perform work."); Perry v. Comm'r of Soc. Sec., No. 3:15-CV-0758 (GTS), 2017

18

WL 5508775, at *7 (N.D.N.Y. Jan. 23, 2017), aff'd sub nom. Perry v. Berryhill, 711 F. App'x 9 (2d Cir. 2017) (summary order) ("This Court has found that a claimant with a marked limitation in performing a work-related function could perform that function occasionally.").

The Court is cognizant that "[s]ince mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings." SSR 85-15, 1985 WL 56857, at *5 (S.S.A. 1985). "Routine or trivial demands in the workplace, such as 'having their performance supervised, and remaining in the workplace for a full day,' can cause mentally impaired claimants to 'cease to function effectively.'" Miller, 2017 WL 4173357, at *6 (quoting SSR 85-15, 1985 WL 56857, at *6). "Indeed, 'the reaction to the demands of work (stress) is highly individualized[.]'" Id. The Court notes that "the ALJ included additional limitations in the RFC formulation designed to address [p]laintiff's difficulties in handling work-related stress." Miller, 2017 WL 4173357, at *6. For example, the ALJ limited plaintiff to work with "no more than incidental contact with the public. The work would need to be limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes." T. 15; see Miller, 2017 WL 4173357, at *6. Moreover, the moderate to marked limitation opined by Dr. Caldwell is not necessarily inconsistent with the ALJ's RFC determination. See Miller, 2017 WL 4173357, at *5-6 (concluding that the ALJ properly considered the consultative examiner's opinion that the plaintiff had "moderate to marked" limitations in appropriately

19

dealing with stress by restricting the plaintiff to "unskilled jobs that involve only occasional changes in the work environment, that require her to make only occasional work-related decisions and judgments, and do not entail teamwork or collaboration"); Phelps v. Colvin, No. 15-257, 2017 WL 372738, at *2 (W.D. Pa. Jan. 26, 2017) ("A limitation to occasional interaction may accommodate a marked limitation."); Fiducia, 2015 WL 4078192, at *4 ("The fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, particularly given the fact that the ALJ limited plaintiff to work that does not require more than occasional interaction with the public and co-workers."); Bush v. Comm'r of Soc. Sec., No. 7:16-CV-1007 (GTS), 2017 WL 4621096, at *8 (N.D.N.Y. Oct. 13, 2017) (concluding that the plaintiff could perform simple work where she retained a moderate-to-marked limitation in her ability to deal with stress).

To the extent that plaintiff testified that she suffered panic attacks due to her stress or presented to the emergency room complaining of stress, see Dkt. No. 9 at 18 (citing T. 63-64, 332, 337, 346, 352), the Court concludes that this evidence fails to demonstrate that the ALJ failed to adequately incorporate limitations in the RFC to account for Dr. Caldwell's moderate to marked limitation. As the Commissioner notes, two of the emergency room visits plaintiff cites where she presented with anxiety and stress-related issues were prior to the relevant period, which began on May 24, 2014. See 346 (presenting to emergency room on June 2, 2013), 352 (presenting to emergency room on November 18, 2012). Emergency records from June 29, 2014 establish that plaintiff stated that she was "depressed" and "stressed out" because she

had lost her job and could not find work. T. 332. Plaintiff's mental status examination was generally normal, and she did not require inpatient treatment. See id. at 226-37. Moreover, as the ALJ set forth in his decision, plaintiff's medical records demonstrate that when plaintiff suffered from anxiety, she still exhibited generally normal findings and denied experiencing any psychiatric symptoms. See id. at 19, 363, 567, 573, 689, 692, 694.

According, the Court concludes that the ALJ properly assessed the stress limitations set forth by Dr. Caldwell, and rendered an RFC determination consistent with the record.

## 2. Plaintiff's Other Treating Providers

Plaintiff argues that the ALJ improperly weighed the opinion evidence of plaintiff's treating psychiatric providers, including NP Henderson and Ms. Williams, as well as Dr. Kang. See Dkt. No. 9 at 19. The opinions of non-acceptable sources,[4] or "other sources," "may be used 'to show the severity of the individual's impairments(s) and how it affects the individual's ability to function.'" Beckers v. Colvin, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (quoting SSR 06-3p, 2006 WL 2329939, at *3, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims (S.S.A. Aug. 9, 2006)). "SSR 06-03p states that an ALJ should apply the same factors to analyze the opinion of a non-acceptable

_____

[4] "Medical sources who are not 'acceptable medical sources[ ]' [include] nurse practitioners, physician assistants, licensed clinical social workers, chiropractors, audiologists, and therapists." SSR 06-3p, 2006 WL 2329939, at *2.

medical source as would be used to analyze the opinion of an acceptable medical source." Id. (citing SSR 06-3p). Indeed, although such sources are not considered "medical opinions" under the regulations and, thus, are not entitled to enhanced weight, "these assessments are nevertheless 'important and should be evaluated on key issues such as impairment severity and functional effects.'" Paquette v. Colvin, No. 7:12-CV-1470 (TJM/VEB), 2014 WL 636343, at *6 (N.D.N.Y. Feb. 18, 2014) (quoting SSR 06-03p, 2006 WL 2329939, at *3). The Second Circuit has made clear that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir. 1995).

First, the Court agrees with the Commissioner that the ALJ correctly granted Dr. Kang[5] "limited weight." The regulations advise that "because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. § 404.1527(c)(3). In the February 7, 2017 report, Dr. Kang explicitly indicates that he was "not involved in direct patient evaluation, treatment or diagnosis." T. 1106. Thus, as the ALJ correctly noted, because of the lack of a treating relationship, Dr. Kang had "little insight into [plaintiff's] actual functional abilities." Id. at 17. Thus, as the Commissioner notes, the ALJ appropriately did not consider Dr. Kang's opinion as that of a treating physician, and granted him the proper weight.

Second, the Court agrees with the Commissioner that the ALJ properly assessed

---

[5] Dr. Kang co-signed NP Henderson's report. See T. 1106.

22

the opinions of NP Henderson and Ms. Williams, and reasonably gave them little weight as they were inconsistent with other evidence in the record, including the providers' own treatment notes.  See Dkt. No. 12 at 11. The ALJ granted NP Henderson's April 2014 and February 2017 opinions "limited weight."  As the ALJ pointed out, NP Henderson was unable to assess at least eight limitation areas in the April 2014 review and two limitation areas in the February 2017 review.  See T. 1017-18, 1104.  The ALJ also correctly indicated "that the majority of the limitations [NP Henderson] identified were based solely on [plaintiff's] reports, as opposed to objective findings."  T. 17; see id. at 1017 ("Plaintiff has reported that she had often felt the need to call in to work due to symptoms of depression or feeling too anxious to attend work.") (noting in the two areas wherein NP Henderson indicated that plaintiff was "unable to meet competitive standards" that the opinion was based on plaintiff's subjective reporting), 1104 ("[Plaintiff] reported difficulty maintaining attendance and work expectations in previous job.").  It is well-settled that "an ALJ may afford less weight to medical opinions that appear to be solely based on a plaintiff's subjective allegations."  Cruz v. Colvin, 278 F. Supp. 3d 694, 699 (W.D.N.Y. 2017) (citation omitted) ("In assigning limited weight to the opinion of plaintiff's treating primary care physician, Dr. Sarah Porter, the ALJ observed that Dr. Porter's reports were inconsistent with the other evidence of record, and that the limitations she described appeared to be based solely on plaintiff's subjective complaints.").   Moreover, as the ALJ noted, NP Henderson's April 2014 and February 2017 reports were inconsistent with other record evidence, including her own observations and treatment notes.  See T. 17.  In the April 2014 review, NP Henderson

23

indicated indicated that plaintiff suffered from major depressive disorder, problems with social environment, and anxiety. Id. at 1015. NP Henderson indicated that plaintiff had been attending psychotherapy and taking her medications as prescribed, and reported benefit to her mood and anxiety. Id. Still, plaintiff continued to experience depression and anxiety symptoms. Id. She indicated that plaintiff was generally alert and oriented at appointments, and her speech was typically fluent. Id. Her mood was often marked as depressed. Id. In the February 2017 report, NP Henderson noted that plaintiff's prognosis was guarded. Id. at 1103. However, as the ALJ suggested, NP Henderson's treatment notes demonstrate generally unremarkable mental status examinations in July 2016, August 2016, and September 2016. See id. at 17, 708-09, 714-15, 720-21.

To the extent that plaintiff argues that the ALJ should have sought additional progress notes from NP Henderson to resolve any apparent ambiguity in the record, the Court disagrees. See Dkt. No. 9 at 21-22. To be sure, "the ALJ is under an affirmative duty to adequately develop the medical record." Rosado v. Barnhart, 290 F. Supp. 2d 431, 438 (S.D.N.Y. 2003) (citing 20 C.F.R. § 416.912(d) (stating that the SSA will make reasonable efforts to obtain a complete medical history from treating sources)). "The ALJ's duty to develop the record remains the same regardless of whether the claimant is represented by counsel." Cruz v. Astrue, 941 F. Supp. 2d 483, 495 (S.D.N.Y. 2013). "Despite this duty, courts in this Circuit have found that 'it is not per se error for an ALJ to make the RFC determination absent a medical source assessment as to what the claimant can still do despite the limitations caused by his or her impairments." Weed Covey v. Colvin, 96 F. Supp. 3d 14, 29 (W.D.N.Y. 2015) (citation omitted).

> [R]emand is not always required when an ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity. Although an ALJ has an affirmative duty to develop the administrative record even when a claimant is represented by counsel, where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.

Id. (internal citation and quotation marks omitted).  Here, as the Commissioner notes, the ALJ did not base his weight determination on the alleged sparsity of NP Henderson's treatment notes; instead, he noted that her assessments were not supported by her own past evaluations.  See Dkt. No. 12 at 12; T. 17.  Even if the record did not contain the entirety of NP Henderson's treatment record, it did contain other medical evidence and opinions from the relevant period, which the ALJ relied on in making his RFC determination.  See Weed Covey, 96 F. Supp. 3d at 29; cf. Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 268 (S.D.N.Y. 2016) (remanding where the record did not contain any of the treating psychiatric's treatment records).  "Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques." Janes v. Colvin, No. 6:15-CV-1518 (GTS), 2017 WL 972110, at *4 (N.D.N.Y. Mar. 10, 2017), aff'd, 710 F. App'x 33 (2d Cir. 2018) (summary order) (citing 20 C.F.R. § 404.1520b; Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999); Schaal, 134 F.3d at 505).  There is nothing in the ALJ's decision, or NP Henderson's report, demonstrating that the ALJ lacked any information necessary to make a proper RFC determination.  See Vicky M. v.

25

Comm'r of Soc. Sec., No. 8:17-CV-521 (DJS), at 9 (N.D.N.Y. Aug. 28, 2018).

The Court finds that a similar analysis may be applied to the medical opinions of Ms. Williams.  Ms. Williams completed five assessments considering plaintiff's employability in conjunction with her mental limitations ranging from October 2014 through October 2016.  See T. 594-95, 1173-74, 1180, 1184-87.  In granting these opinions "limited weight," the ALJ reasoned that the "significant functional limitations [Ms. Williams] identified [were] not supported by the objective medical evidence, including treatment notes from her office."  Id. at 18.  As both the ALJ and the Commissioner indicate, Ms. Williams' treatment notes demonstrate plaintiff's progress in her treatment and in identifying the triggers of her anxiety and obsessive thoughts and compulsive behaviors.  See id. at 18, 369, 372, 374, 375, 380, 385, 646, 650-51, 660-62, 682; see also Dkt. No. 12 at 15.  As the Commissioner indicates, Ms. Williams' assessment of plaintiff's GAF score was indicative of only moderate symptoms in November 2014 and July 2015, and mild symptoms in October 2015.  T. 368-69, 645, 1069; Dkt. No. 12 at 16-17.

Further, records from July 2016 note that plaintiff had connected with a women's support group to "reenter and obtain gainful employment," signed up and been accepted to OCM BOCES, and signed up with Acces-VR for additional support training.  T. 1093. Plaintiff indicated that her "social network growing and skills obtain[ed] . . . [were] improving her quality of life."  Id.  Plaintiff stated that she had a positive response to treatment.  Id.  To the extent that plaintiff raises potential conflicting evidence within Ms. Williams' treatment notes, it was within the ALJ's discretion to weigh this evidence

against other evidence in the record and resolve the conflict accordingly.  See Armstrong v. Comm'r of Soc. Sec., No. 1:06-CV-1049 (DNH), 2009 WL 2883046, at *4 (N.D.N.Y. Sept. 4, 2009) ("The ALJ was well within his discretion to resolve the evidentiary conflict presented by Dr. Zimring's opinion."); Crouch ex rel. K.C. v. Astrue, No. CIV.A. 5:11-820, 2012 WL 6948676, at *8 (N.D.N.Y. Dec. 31, 2012), report and recommendation adopted 2013 WL 316547 (N.D.N.Y. Jan. 28, 2013) ("[I]t is an [ALJ's] exclusive prerogative to sort through and resolve conflicts in the evidence.").  In addition, there is no indication that the ALJ cherry picked or otherwise "selectively chose to consider only the parts of William's [sic] treatment notes that suggested that [p]laintiff was recovering from her mental disability[.]"  Dkt. No. 9 at 23.  It is well-settled that "[t]he ALJ was entitled to separately weigh each of the available opinions, and to adopt only those portions of the opinions which were consistent with, and/or supported by, the other evidence of record." Burkey v. Colvin, 284 F. Supp. 3d 420, 424 (W.D.N.Y. 2018).

Moreover, the ALJ's RFC determination and appropriation of weight amongst medical opinions is consistent with Dr. Caldwell's opinion.  As indicated above, the ALJ properly granted Dr. Caldwell consultative psychiatric evaluation "great weight."  See supra, at 18-22; see also Sauvie v. Comm'r of Soc. Sec., No. 7:16-CV-1302, 2018 WL 748897, at *6 (N.D.N.Y. Feb. 7, 2018) ("The Second Circuit has consistently recognized that opinions from consultative examiners, including non-examining consultants, may constitute substantial evidence in support of a RFC and may be afforded more weight than a plaintiff's treating source.") (citing Heagney-O'Hara v. Comm'r of Soc. Sec., 646 F. App'x 123, 126 (2d Cir. 2016) (summary order) (ALJ properly afforded more weight to

non-treating source than treating source because the non-treating source's opinion was consistent with the objective medical evidence in the record); Monette v. Colvin, 654 F. App'x 516, 518 (2d Cir. 2016) (summary order) ("The greater weight accorded by the ALJ to the opinion of the consultative psychologist is also consistent with the record at large and the applicable regulations."); Snyder v. Colvin, 667 F. App'x 319, 320 (2d Cir. 2016) (summary order) ("The opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence."). Dr. Caldwell's opinion was also consistent with the opinion of the State agency psychological consultant Dr. Juriga, who, after reviewing the record, opined that plaintiff retained the ability to perform semi-skilled work. T. 91. In granting Dr. Juriga's opinion "partial weight," the ALJ took "into account [plaintiff's] treatment history," and, instead, limited her to simple work activity. Id. at 16. Accordingly, the Court concludes that the ALJ's decision to discount plaintiff's treating provider's medical opinions was supported by substantial evidence.

The ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015). "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'" Camarata v. Colvin, No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)). It is clear from the ALJ's overall decision that he appropriately

considered the evidence before him, including the opinions of record and plaintiff's medical records.

As such, the Court's review of the ALJ's overall decision indicates that he properly reviewed the evidence of record and provided sufficient explanation for his analysis. For the reasons above, the Court therefore finds that the ALJ's RFC determination (including his analysis of the opinion evidence) and overall finding that plaintiff is not disabled are supported by substantial evidence.

## III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Sophie H.'s motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: August 22, 2019
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge